ROBERT P. ANDRIS (SBN 130290)
LAEL D. ANDARA (SBN 215416)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 300
Redwood City, CA 94063-2052
Telephone: (650) 364-8200
Facsimile: (650) 780-1701
Email: randris@rmkb.com
       landara@rmkb.com

Attorneys for Defendant
HEAVEN HILL DISTILLERIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RARE BREED DISTILLING LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>HEAVEN HILL DISTILLERIES, INC., a Kentucky Corporation, et al.,<br><br>Defendants. | CASE NO. CV-09-4728 EDL<br><br>***AMENDED***<br>**DEFENDANT HEAVEN HILL DISTILLERIES, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER FOR CONVENIENCE OF THE WITNESSES [28 U.S.C. § 1404(a)] AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  **January 12, 2010**<br>Time:  **2:00 p.m.**<br>Ctrm:  **E, 15th Floor** |

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
|  | A. Rare Breed Acquired The Wild Turkey Brand In April 2009 | 2 |
|  | B. Heaven Hill Distilleries, Inc | 3 |
|  | C. The Trademarks At Issue | 6 |
| III. | LEGAL ANALYSIS | 7 |
|  | A. Standards For Ruling On A Motion To Transfer Venue Under Section 1404(a) | 7 |
|  | B. This Action "Might Have Been Brought" In The Eastern District Of Kentucky | 8 |
|  | C. The Convenience Factors Weigh Heavily In Favor Of Transfer | 9 |
|  |    1. Plaintiff's Choice of Forum | 9 |
|  |    2. Convenience of the Parties | 10 |
|  |    3. Convenience of the Witnesses | 11 |
|  |    4. Ease of Access to Evidence | 12 |
|  | D. Interests Of Justice Factors | 13 |
|  |    1. Familiarity of Each With the Applicable Law | 13 |
|  |    2. Local Interest in the Controversy | 13 |
| IV. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*AJ Industries Inc. v. United States District Court for the Central District of California*
  503 F.2d 384 (9th Cir. 1974) ..................................................................................8

*Bunker v. Union Pacific Railroad Co.*
  2006 WL 193856 (N.D. Cal. 2006) .......................................................................10

*Continental Grain Co. v. Barge FBL-585*
  363 U.S. 19 (1960)...................................................................................................7

*Cottman Transmission System, Inc. v. Martino*
  36 F.3d 291 (3d Cir. 1994) ....................................................................................10

*Decker Coal Co. v. Commonwealth Edison Co.*
  805 F.2d 834 (9th Cir. 1986) ..............................................................................7, 8

*Dwyer v. General Motors Corp.*
  853 F.Supp. 690 (S.D. NY 1994) ..........................................................................11

*Hoffman v. Blaski*
  363 U.S. 335 (1960)..............................................................................................7, 8

*Jarvis v. Marietta*
  1999 U.S. Dist. LEXIS 12659 ...............................................................................11

*Jones v. GNC Franchising*
  212 F.3d 495 (9th Cir. 2009) ..................................................................................8

*Kannar v. Alticor*
  209 U.S. Dist. LEXIS 35091 (N.D. Cal. 2009) ......................................................7

*Langford v. Ameritanz*
  2006 U.S. Dist. LEXIS 32823 (E.D. Cal. 2006).............................................8, 9, 10

*Mission Insurance Co. v. Purina Fashions Corp.*
  706 F.2d 599 (5th Cir. 1983) ..................................................................................9

*Pacific Car and Foundry Co. v. Pence*
  403 F.2d 949 (9th Cir. 1968) ..................................................................................9

*Piper Aircraft Co. v. Reyno*
  454 U.S. 235 (1981)..................................................................................................7

*Royal Queentex Enterprises, Inc. v. Sara Lee Corp.*
  2000 U.S. Dist. LEXIS 10139 .............................................................................8, 11

*Solomon v. Continental America Life Insurance Co.*
  472 F.2d 1043 (3d Cir. 1973) ................................................................................10

*Temple v. Guardsmark LLC*
  2009 U.S. Dist. LEXIS 91306 .................................................................................8

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Van Dusen v. Barrack*
   376 U.S. 612 (1964) .......................................................................................................... 7

*In re Volkswagen AG*
   371 F.3d 201 (5th Cir. 2004) ........................................................................................... 10

*Warfield v. Gardner*
   346 F.Supp.2d 1033 (D. Ariz. 2004) ................................................................................ 9

*Williams v. Bowman*
   157 F.Supp.2d 1103 (N.D. Cal. 2001) ......................................................................... 8, 9

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5450847.1/LD

- iii -

AMENDED MEMO OF PA ISO MTN TO TRANSFER FOR CONVENIENCE OF WITNESSES - NO. CV-09-4728 EDL

**TO ALL PARTIES HEREIN AND THEIR COUNSEL:**

PLEASE TAKE NOTICE that on January 12, 2010, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom E, before the Honorable Magistrate Judge Elizabeth D. Laporte of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, defendant Heaven Hill Distilleries, Inc. ("Heaven Hill") will move the Court to transfer this lawsuit from the Northern District of California to the Frankfort Division of the District Court for the Eastern District of Kentucky, pursuant to 28 U.S.C. § 1404(a).

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declarations of Robert P. Andris and the exhibits attached thereto, Max L. Shapira and the exhibits attached thereto, David Sparrow, Avery Sparrow, Genie Mitchell, and Mark Fisher, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This action for trademark infringement arises from a dispute between two competitors in the distilled beverage industry. Plaintiff, Rare Breed Distilling LLC ("Rare Breed"), is the owner of the Federally Registered Trademark "Wild Turkey American Honey", a bourbon based liqueur flavored with honey, which plaintiff's predecessors in interest introduced in 2006. Complaint 2:3-7. In 2009, defendant began selling its own honey-flavored bourbon liqueur under the trademark "Evan Williams Honey Reserve". *Id.* at 1:26-2:2.

Heaven Hill now moves this Court for an order transferring this matter from the Northern District of California to the Eastern District of Kentucky under 28 U.S.C. § 1404(a) because the balance of conveniences weighs heavily in favor of transfer. Heaven Hill's product about which Rare Breed complains has never been shipped into or sold in California. Moreover, both parties operate distilleries in the Commonwealth of Kentucky, sell their products there, and are, therefore, subject to jurisdiction in the Eastern District of Kentucky.

In addition, California is not the plaintiff's principal place of business; thus, the Court

RC1/5450847.1/LD

AMENDED MEMO OF PA ISO MTN TO
TRANSFER FOR CONVENIENCE OF
WITNESSES - NO. CV-09-4728 EDL

should give little weight to plaintiff's choice of this District as the original forum for this suit in ruling on this motion to transfer venue. The majority of the witnesses and evidence that will be at issue in this case are located in Kentucky, in the Southern United States or on the East Coast. Accordingly, all of the factors to be considered by this Court either weigh in favor of transfer or are neutral. On balance, there is no question that California was selected for the convenience of plaintiff's counsel and to increase the cost of the defending this matter. As such, transfer to the Eastern District of Kentucky is warranted.

## II.

## FACTUAL BACKGROUND

**A.    Rare Breed Acquired The Wild Turkey Brand In April 2009**

According to information found on plaintiff's website, the Ripy Brothers built a distillery at Lawrenceburg, Kentucky in 1905. In 1940, an executive at the Ripy Brothers distillery took warehouse samples of one of their whiskeys on a hunting trip for wild turkey. The next year, his friends asked him for some of that "wild turkey" whiskey and a brand was born. Declaration of Robert P. Andris, Exhibit A, p. 3 ("Andris Dec., Ex.").

In 1971, the Ripy's business was purchased by the Austin, Nichols Distilling Company. In 1980, Austin, Nichols sold the Wild Turkey brand to Pernod Ricard. Andris Dec., Ex. B, p. 4. On April 8, 2009, the Campari Group announced its acquisition of the Wild Turkey brand from Pernod Ricard, and the Campari group had Wild Turkey trademark registrations assigned to Rare Breed. Andris Dec., Ex. B, pp. 8 and 12 and Ex. C.

The Campari Group is a multi-national producer of alcoholic and non-alcoholic beverages based in Italy. Andris Dec., Ex. C. The group holds a portfolio of over 40 brands which are marketed and distributed in more than 190 countries. Andris Dec., Exs. B and C. Currently, the Campari Group advertises "Wild Turkey" as the world's number one premium Kentucky Bourbon Whiskey. Ex. B, p. 12. Within the Wild Turkey brand, Campari lists "American Honey" as a honey and bourbon-based liqueur. Ex. B, p. 8. According to its website, the Campari Group has an office located at One Beach Street, San Francisco, California. Ex. B, p. 7. This is the address of one of Campari's additional subsidiaries, SKYY Spirits LLC. Andris Dec., Ex. B.

1  Rare Breed is a Delaware limited liability company that was formed on April 13, 2009.
2  Following its formation in Delaware, it registered to do business in Kentucky with Kentucky's
3  Secretary of State on April 22, 2009. Andris Dec., Ex. D, p. 4. In this filing, Rare Breed
4  provided the address of its registered agent in Delaware, 1209 Orange Street, Wilmington,
5  Delaware, presumably to fulfill the requirement that it provide the "street address of the office
6  required to be maintained in the state of formation" in response to Item No. 6 in its application,
7  since this address is certainly not its principal office address. *Ibid.* Following this, Rare Breed
8  registered with the Secretary of State for the Commonwealth of Kentucky the following assumed
9  names: Austin Nichols Distilling Co.; Austin, Nichols Distilling Company; Satin Wood
10 Distilling Co.; Stainwood Distilling Co.; Wild Turkey Distillery; Wild Turkey Distilling Co.;
11 Rare Breed Distillery; Rare Breed Distilling Co.; and Rare Breed Distilling. Andris Dec., Exs. D,
12 p.4, F and G. In <u>each</u> of these filings, Rare Breed stated that its principal office is located at 1525
13 Tyrone Road, Lawrenceburg, Kentucky. See Ex. D, pp. 2, 7, 9; Ex. E, pp. 2, 4; Ex. F, p. 7; Ex. G,
14 pp. 2, 4.

15  This address, 1525 Tyrone Road, Lawrenceburg, Kentucky, not coincidentally happens to
16 be the address of the Wild Turkey distillery. Andris Dec., Ex. G. This facility is reported to house
17 all of the Rare Breed's 40 employees. Moreover, Rare Breed's products emanate from this
18 location as well, including the Wild Turkey American Honey product, which provides on its label
19 that the product is "Bottled by the Austin, Nichols Distilling Company Lawrenceburg, KY USA."
20 Shapira Dec., Ex. C, p. 2.

21  In contrast to the close ties it has with Kentucky, Rare Breed Distilling LLC has neither
22 registered to do business in California with its Secretary of State nor obtained any type of license
23 from the California Department of Alcoholic Beverage Control authorizing it to import or sell
24 alcoholic beverages in California. Andris Dec., Exs. H and I.

25 **B.   Heaven Hill Distilleries, Inc.**
26  Heaven Hill is the largest independent, family-owned and operated producer and marketer
27 of distilled spirits in the United States. Shapira Dec. 1:21-22. Heaven Hill's headquarters are
28 located in Bardstown, Kentucky and its internal marketing personnel are based in Louisville,

RC1/5450847.1/LD          - 3 -          AMENDED MEMO OF PA ISO MTN TO TRANSFER FOR CONVENIENCE OF WITNESSES - NO. CV-09-4728 EDL

1  Kentucky. Shapira Dec. pp. 1:23-24, 2:11-24.

2  One of Heaven Hill's leading brands is Evan Williams®. 1:25-2:1. Under this brand name, Heaven Hill markets several different bourbons, including: Evan Williams Black Label, Evan Williams Green Label, Evan Williams White Label, Evan Williams Red Label, Evan Williams Blue Label, Evan Williams 1783 and Evan Williams Single Barrel Vintage. *Id.*

In August 2009, Heaven Hill began shipping the latest product in the Evan Williams line, "Evan Williams Honey Reserve," a Kentucky liqueur made with extra-aged bourdon infused with real honey. *Id.* at 2:2-4. To date, this product has been shipped only to the following states: Arkansas, Connecticut, Georgia, Kentucky, Maryland, Massachusetts, Michigan, Mississippi, Nebraska, North Carolina, Oklahoma, Rhode Island, South Carolina, Tennessee, Texas, and Virginia. 2:4-7. The Evan Williams Honey Reserve product has not been sold in, shipped into, or offered for sale in California. *Id.* at 2:9-10.

Heaven Hill's EVAN WILLIAMS HONEY RESERVE product was developed by Heaven Hill employees who reside in Kentucky and work from Heaven Hill's Louisville and Bardstown offices. 2:11-13. The individuals involved in the development of this product include Max L. Shapira, President of Heaven Hill; Kate Latts, Director of Marketing; Susan Wahl, Brand Manager for EVAN WILLIAMS; Hannah Snedeker, Assistant Brand Manager for EVAN WILLIAMS; Becky Alvey, Assistant Brand Manager for EVAN WILLIAMS; Larry Kass, Director of Corporate Communications, and Steve Feller, Director of North American Sales. 2:13-17. These individuals will be witnesses in this proceeding and will offer testimony regarding one or more of the following topics: the selection of the EVAN WILLIAMS HONEY RESERVE mark; the development of the packaging and trade dress for the EVAN WILLIAMS HONEY RESERVE product; the marketing strategy for the EVAN WILLIAMS HONEY RESERVE product, including the recommended placement of the product in retail outlets; label approval for the EVAN WILLIAMS HONEY RESERVE product; and development of the EVAN WILLIAMS HONEY RESERVE product. 2:18-24. These individuals constitute a substantial portion of Heaven Hill's senior management team and its marketing team (including essentially the entire marketing team for the EVAN WILLIAMS product line). 2:24-26.

1    The firm of Keller Crescent Advertising was also involved in the development of the
EVAN WILLIAMS HONEY RESERVE product. 3:1-2. Keller Crescent Advertising is located in
Evansville, Indiana, and the following individuals were involved in the development of the
EVAN WILLIAMS HONEY RESERVE product: Peter Weber, President; Drew Wesley, Vice-
President; Greg Meunier, Account Director; and Jamie Carrie, Account Manager. 3:2-5. At trial,
Heaven Hill would call these individuals, each of whom resides in the vicinity of Evansville,
Indiana, to testify regarding the design of the packaging and marketing materials for the EVAN
WILLIAMS HONEY RESERVE and the choice of the EVAN WILLIAMS HONEY RESERVE
name for the product. 3:5-9.

Lonnie Hibbs; Vickie Evans, Kathie Holt, and Lisa Wooton are Heaven Hill's customer service representatives who primarily receive order for an customer inquiries about the Evan Williams Honey Reserve product and will offer testimony regarding same.  Each of these individuals resides in Kentucky and works from Heaven Hill's Kentucky offices. 3:10-15.

Heaven Hill employees involved with the sale and distribution of the Evan Williams Honey Reserve product include: Steve Feller, Director of North American Sales; Jim Cotter, Manager of Sales for the Northern District; Steve Alexander, Manager of Sales for the Eastern District; and John Smart, Manager of Sales for the Western District.  These individuals, each of whom resides in Kentucky and works from Heaven Hill's Kentucky offices, will be witnesses in this proceeding and will offer testimony regarding the distribution of the EVAN WILLIAMS HONEY RESERVE product, including the locations to which the product has been shipped. 3:16-23.

All of the documents and other materials related to the Evan Williams Honey Reserve product are located in Heaven Hill's offices in Louisville and Bardstown, Kentucky. 3:24-27. This material amounts to approximately 10-12 Bankers boxes. *Id.* All of Heaven Hill's computer systems and electronic records are located in the Louisville and Bardstown offices, and the person best qualified to testify about these systems and records is Danny Jackson, Heaven Hill's IT Manager.  Mr. Jackson is a resident of Kentucky and works from Heaven Hill's Kentucky offices. All of the samples of Evan Williams Honey Reserve are likewise located at their distillery and

1 warehouses in Kentucky. 4:1-7.

2 In the defense of this trademark infringement action, Heaven Hill also plans to depose and
3 call as witnesses, employees of third-party brokers that handle the EVAN WILLIAMS HONEY
4 RESERVE product in Oklahoma, North Carolina, and Virginia. 4:10-25. For North Carolina and
5 Virginia, the broker is Sparrow, Inc., and the employees knowledgeable of its efforts to market
6 the EVAN WILLIAMS HONEY RESERVE product are David and Avery Sparrow for North
7 Carolina and Genie Mitchell for Virginia. Declarations of David Sparrow, Avery Sparrow and
8 Genie Mitchell. David and Avery Sparrow reside in Raleigh, North Carolina, and Genie Mitchell
9 resides in Richmond, Virginia. *Ibid.* For Oklahoma, the broker is J.H, Marketing, and the
10 specific employee that is involved with the EVAN WILLIAMS HONEY RESERVE product is
11 Mark Fisher, who resides in Oklahoma City. Declaration of Mark Fisher. These brokers are
12 engaged in obtaining listing for, placement of, and development and implementation of
13 merchandising programs for distilled beverage products in their respective porfolios, including
14 the EVAN WILLIAMS HONEY RESERVE product, in their respective states. *Ibid*. Heaven
15 Hill plans to call each of these individuals as a witness to testify regarding the placement of the
16 EVAN WILLIAMS HONEY RESERVE product in retail stores in the particular state covered by
17 that individual and the lack of consumer confusion between the Evan Williams Honey Reserve
18 product and the Wild Turkey American Honey Product. Each of these individuals has provided a
19 declaration stating that he or she would willing appear offer such testimony in a court located in
20 Kentucky, but would not be able to do so in a court located in California due to the greater time
21 and expense involved with traveling to California. Shapira Dec., 2:22-27.

22 **C.    The Trademarks At Issue**

23 On May 1l, 2006, Austin Nichols & Co., Incorporated was issued U.S. Trademark
24 Registration No. 3,304,574 for the standard character mark "WILD TURKEY AMERICAN
25 HONEY". Significantly, the records of the United States Patent and Trademark Office
26 ("USPTO") demonstrate that, in its application to register this mark, Austin, Nichols & Co.
27 disclaimed the "exclusive" right to use the phrase "AMERICAN HONEY" apart from its use in
28 the trademark "WILD TURKEY AMERICAN HONEY". Rare Breed is now listed as the owner

RC1/5450847.1/LD — - 6 - — AMENDED MEMO OF PA ISO MTN TO TRANSFER FOR CONVENIENCE OF WITNESSES - NO. CV-09-4728 EDL

1 of this registration in the USPTO's online records.

2     On May 4, 2009, Heaven Hill Distilleries Inc. filed Application Serial No. 77/727,937 for
3 the standard character mark "Evan Williams Honey Reserve". After requiring Heaven Hill to
4 disclaim the exclusive right to use the phrase "Honey Reserve" apart from its use in the "Evan
5 Williams Honey Reserve" mark, the USPTO found that Heaven Hill's mark did not conflict with
6 any other registered mark and published the application for opposition on September 15, 2009.

## III.

## LEGAL ANALYSIS

**A. Standards For Ruling On A Motion To Transfer Venue Under Section 1404(a)**

Motions to transfer venue are governed by 28 U.S.C. § 1404(a). Section 1404(a) provides that for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where the action might have been brought. 28 U.S.C. § 1404(a). The purpose of this code section is to prevent the waste of "time, energy and money" and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *quoting*, *Continental Grain Co. v. Barge FBL-585,* 363 U.S. 19, 26-27 (1960).

Under section 1404(a), the moving party has the burden of proving that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the presumption in favor of the plaintiff's choice of forum. See, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981).

In order to support a motion to transfer venue, the moving party must show that the forum to which they seek transfer is a forum in which the action originally might have been brought. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). In addition, the transfer must be for the convenience of the parties and witnesses and in the interest of justice. See, *Decker Coal, supra,* 805 F.2d at 843; see also, *Kannar v. Alticor,* 209 U.S. Dist. LEXIS 35091 *2-*3 (N.D. Cal. 2009).

In making its determination as to whether transfer is appropriate in a particular case, a district court must weigh multiple factors in addition to the convenience of parties and witnesses.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1 *Jones v. GNC Franchising*, 212 F.3d 495, 498 (9th Cir. 2009). In cases involved business torts, judges in the Northern District of California have considered the following factors:

> (1) plaintiff's choice of forum,
> (2) convenience of the parties,
> (3) convenience of the witnesses,
> (4) ease of access to the evidence,
> (5) familiarity of each forum with the applicable law,
> (6) feasibility of consolidation with other claims,
> (7) any local interest in the controversy, and
> (8) the relative court congestion and time of trial in each forum.

See, *Royal Queentex Enterprises, Inc. v. Sara Lee Corp.*, 2000 U.S. Dist. LEXIS 10139, at *2 (citing, *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)); *Williams v. Bowman*, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001); see also, *Langford v. Ameritanz*, 2006 U.S. Dist. LEXIS 32823 at *6 (E.D. Cal. 2006); and, *Temple v. Guardsmark LLC,* 2009 U.S. Dist. LEXIS 91306 at *6-*7.

**B.     This Action "Might Have Been Brought" In The Eastern District Of Kentucky**

Transfer under section 1404(a) is limited to courts where the action might have been brought. See, *Hoffman v. Blaski*, *supra*, 363 U.S. at 344; *AJ Industries Inc. v. United States District Court for the Central District of California,* 503 F.2d 384, 386 (9th Cir. 1974). Thus, the transferee court must have had complete personal jurisdiction over defendants, subject matter jurisdiction over the claim, and proper venue had the claim originally been brought in that court. *Ibid.*

Here, it cannot be disputed that this action "might have been brought" in the Eastern District of Kentucky. Heaven Hill is a Kentucky corporation that sells its products throughout Kentucky, clearly providing the District Court for the Eastern District of Kentucky with personal jurisdiction over Heaven Hill and making venue proper in that district. And since the matter arises out of federal law, the District Court for the Eastern District of Kentucky has proper subject matter jurisdiction over the claim.

Therefore, since the action might have been brought in the Eastern District of Kentucky, this analysis now turns to a consideration of the convenience and justice factors particular to this case.

RC1/5450847.1/LD — - 8 - — AMENDED MEMO OF PA ISO MTN TO TRANSFER FOR CONVENIENCE OF WITNESSES - NO. CV-09-4728 EDL

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

### C. The Convenience Factors Weigh Heavily In Favor Of Transfer

#### 1. Plaintiff's Choice of Forum

While a plaintiff's choice of forum is generally given substantial weight, that choice is not the final word. *Pacific Car and Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968). Circumstances in which a plaintiff's chosen forum will be accorded little deference include cases of anticipatory suits and forum shopping. See, *Mission Insurance Co. v. Purina Fashions Corp.*, 706 F.2d 599, 602, note 3 (5th Cir. 1983). In addition, courts afford little deference to a plaintiff's choice of forum when the plaintiff's principal place of business is not in that forum. See, *Langford v. Ameritanz, supra,* 2000 U.S. Dist. LEXIS at *21; *Warfield v. Gardner,* 346 F.Supp.2d 1033, 1044 (D. Ariz. 2004); *Williams v. Bowman, supra,* 157 F.Supp.2d at 1106.

Here, Rare Breed has neither registered with the California Secretary of the State to do business in California nor obtained a license from the California Department of Alcoholic Beverage Control. Rare Breed has, however, registered with the Commonwealth of Kentucky and has provided in its numerous assumed name flings in Kentucky that its principal office is located in Lawrenceburg, Kentucky. It has also received numerous licenses from the Kentucky Department of Alcoholic Beverage Control. Based on these particular facts alone, it is overwhelmingly apparent that plaintiff's choice of forum amounts to little more than forum shopping and "competition by litigation." The Court should, therefore, give little deference plaintiff's choice of this forum.

But this is not all. Considering the distilleries that produce both products at issue are located in Kentucky; party witnesses are primarily located in Kentucky, along with their documents and computers; and non-party witnesses are located in states that are much closer to Kentucky than California, it is obvious that plaintiff's choice of this forum has no real connection to this forum. While Rare Breed does have an office in San Francisco, there is no indication that any of the employees located at that office are connected to the issues at bar. Instead, it appears that Rare Breed chose this forum because its counsel has an office in the Northern District of California. It should be noted that the firm representing plaintiff does not have an office in Kentucky, nor are any of its attorneys licensed to practice in that state. See

RC1/5450847.1/LD - 9 - AMENDED MEMO OF PA ISO MTN TO TRANSFER FOR CONVENIENCE OF WITNESSES - NO. CV-09-4728 EDL

1   http://www.jmbm.com/lawyers, Bar Admission.  Nevertheless, "the convenience of counsel is

2   irrelevant and not a factor to be assessed in determining whether to transfer a case under Section

3   1404(a)."  *Langford v. Ameritanz*, 2006 U.S. Dist. LEXIS 32823 at *6 (E.D. Cal. 2006) (Citing

4   *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004)); *Solomon v. Continental Am. Life Ins.*

5   *Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973); *Bunker v. Union Pacific Railroad Co.*, 2006 WL

6   193856, *2 (N.D. Cal. 2006).

7       Moreover, this is an action for trademark infringement, but infringement could not have

8   occurred in the forum selected by Rare Breed since the accused product has never entered this

9   forum.  Accordingly, this claim does not arise in California since longstanding precedent makes it

10  clear that a claim for trademark infringement arises where the customer buys the product.  *See,*

11  *e.g., Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

12      Finally, the evidence of forum shopping and "competition by litigation" becomes even

13  clearer when the viability of this trademark infringement action is considered.  As set forth above,

14  plaintiff's registered mark is "Wild Turkey American Honey".  Both the application and the

15  registration for this mark expressly disclaim the exclusive right to use "American Honey" apart

16  from the words "Wild Turkey" because "American honey" merely describes the product and is

17  not protectable.  Alternatively, Heaven Hill's mark is "Evan Williams Honey Reserve" and the

18  USPTO required Heaven Hill to disclaim the exclusive right to use the words "Honey Reserve"

19  apart from the entire mark.

20      The only word the two marks have in common is the word "honey".  That term is

21  descriptive of a key ingredient in both products.  Based on this mark-to-mark comparison,

22  plaintiff's infringement action is tenuous at best.

23      Plaintiff's chosen forum has no connection with the facts of this case; therefore, the Court

24  should afford little weight to plaintiff's choice in considering this motion to transfer venue.

25      **2.   Convenience of the Parties**

26      It is difficult to conceive how it would be inconvenient for Rare Breed to litigate this

27  matter in the Eastern District of Kentucky.  While Rare Breed has an office located in California,

28  the Wild Turkey Distillery is located in Kentucky, Rare Breed is a registered limited liability

1  company in Kentucky, and its predecessor in interest, Austin, Nichols (which developed the
2  product), is located in Kentucky along with all of its written and electronically stored documents.
3  Finally, as a subsidiary of a world-wide entity, Rare Breed would be better able to bear any
4  additional costs associated with the transfer of this matter to Kentucky. See, *Dwyer v. General*
5  *Motors Corp.,* 853 F.Supp. 690, 693 (S.D. NY 1994) [finding a court may also consider the
6  relative means of the parties in deciding a transfer motion].

### 3. Convenience of the Witnesses

8  One of the most important factors in determining whether to grant a motion to transfer
9  venue is the convenience of the witnesses. In balancing the convenience of the witnesses,
10 primary consideration is given to third party, as opposed to employee witnesses. *Royal Queentex*
11 *v. Sara Lee, supra,* 2000 U.S. Dist. LEXIS 10139 at *18-*19; see also, *Jarvis v. Marietta,* 1999
12 U.S. Dist. LEXIS 12659, *6.
13 As set forth above, the entity which originally obtained the "Wild Turkey American
14 Honey" trademark, Austin, Nichols Company, is located in Kentucky. In defense of rare Breed's
15 claims, Heaven Hill plans to call as witnesses employees of Keller Crescent Advertising who are
16 located in Evansville, Indiana, approximately 170 miles from the courthouse for the Frankfort
17 division of the District Court for the Eastern District of Kentucky. Heaven Hill additionally plans
18 to call as witnesses certain witnesses employed by distilled beverage brokers who are located in
19 Oklahoma, North Carolina, and Virginia. For each of these witnesses, Frankfort, Kentucky is a
20 much more convenient destination than San Francisco, California, and each of these witnesses has
21 declarared that he or she would voluntarily appear in Kentucky but would not be willing or able
22 to travel to California to appear. Finally, since the products of both parties are sold in Kentucky,
23 each party would be able to compel fact witnesses involved in the sale of the products to appear.
24 Moreover, in this case the convenience of both parties would be served by transferring this
25 case to the Eastern District of Kentucky. As discussed at length above, Heaven Hill's employee
26 witnesses work primarily from offices in Louisville and Bardstown. These offices are within
27 sixty miles of the courthouse for the Frankfort division of the District Court for the Eastern
28 District of Kentucky. And Rare Breed's principal place of business at 1525 Tyrone Road,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   Lawrenceburg, Kentucky is a mere seventeen miles from the courthouse. In stark contrast, Rare
2   Breed's choice of this forum would require the party witnesses to spend two full days traveling to
3   and from this forum, more than 4,000 miles roundtrip, when required to appear before the Court.
4       In summary, this is not a case where transfer would merely "shift" the inconvenience from
5   one party to another. Rare Breed's employees connected to its principal place of business at the
6   Wild Turkey Distillery in Lawrenceburg, Kentucky are located in the Eastern District of
7   Kentucky a mere seventeen miles from the courthouse. In addition, both Heaven Hill's employee
8   witnesses and its disclosed third-party witnesses are located far closer to the Eastern District of
9   Kentucky than they are to the Northern District of California, and some of the third-party
10  witnesses have stated that they would not willingly travel to the Northern District of California to
11  testify. Finally, in the Eastern District of Kentucky, each party would be able to use the court's
12  subpoena power to require third-party fact witnesses involved in the sale of both products to
13  appear before the court to offer testimony regarding the presence or absence of actual confusion
14  in retail stores that sell both products. No such witnesses would be available in the Northern
15  District of California since Heaven Hill's Evan Williams Honey Reserve product has not been
16  shipped into or sold in California.
17      This factor, therefore, weighs heavily in favor of transfer.

    **4.    Ease of Access to Evidence**

19      As set forth above, Rare Breed's principal office is located in Kentucky as are Heaven
20  Hill's offices. As such, all, or a large majority, of the written and electronically stored documents
21  pertinent to this dispute are located in Kentucky.
22      Moreover, Rare Breed makes specific allegations in its Complaint regarding the manner in
23  which the products are sold that contribute to, or evidence, confusion. For example, Rare Breed
24  alleges that the Evan Williams Honey Reserve product is placed side by side with the Wild
25  Turkey American Honey product on retailers' shelves. Rare Breed further alleges that the
26  placement of the products in such close proximity would confuse consumers. Such allegations
27  are, however, neither provable nor disprovable in California since Heaven Hill has not sold the
28  accused product in California. Accordingly, no California retailer could have placed the products

RC1/5450847.1/LD      - 12 -      AMENDED MEMO OF PA ISO MTN TO TRANSFER FOR CONVENIENCE OF WITNESSES - NO. CV-09-4728 EDL

side by side, and no California consumer could have encountered the party's products being displayed in such an arrangement. Thus, in the present forum proving or disproving these allegations depends on the ability of the parties to convince third party witnesses to appear voluntarily. On the other hand, if the case were transferred to the Eastern District of Kentucky, retailers whose establishments carry both products and consumers who have encountered both products would be subject to the court's subpoena power.

This factor, therefore, weighs heavily in favor of transfer.

**D.　Interests Of Justice Factors**

　　**1.　Familiarity of Each With the Applicable Law**

This factor does not weigh heavily in favor of, or against, transfer. While the Northern District of California has greater familiarity with plaintiff's co-pending causes of action under the California Business and Professions Code, this matter is primarily one filed under Federal law for trademark infringement. Both the Eastern District of Kentucky and the Northern District of California are equally familiar with Federal Trademark law.

Since the application of the laws of the various states is a regular part of the duties imposed on all federal district courts, it cannot be said that the Kentucky judiciary is incapable of handling claims governed by California law. Moreover, since Heaven Hill has not sold or otherwise made the accused product available in California, these state law claims have no merit and should not be accorded any weight in this analysis.

Thus, this factor is neutral.

　　**2.　Local Interest in the Controversy**

As explained above, California does not have a dog in this fight. Neither party is a California corporation (and Rare Breed has not even registered with the state), and the principal place of business and the distillery of each party are located in Kentucky. Moreover, Heaven Hill has not sold the accused products in California.

Alternatively, Kentucky has a substantial local interest in this matter. The locations of the distilleries and the locations of the party witnesses in Kentucky all warrant a finding that this factor weighs in favor of transfer. Moreover, since Heaven Hill is presently selling its Evan

Williams Honey Reserve product in Kentucky, the plaintiff's claim can be said to arise in Kentucky.

## IV.

## **CONCLUSION**

Based on the foregoing, Heaven Hill has borne its burden of proving that the convenience of the witnesses and the parties, as well as the interest of justice, weigh heavily in favor of transfer. The accused product has never been sold in this forum. Both products at issue are manufactured only in Kentucky and are sold there. Combined, the parties have more than 200 years of history in Kentucky, and each party's principal place of business is in Kentucky. As such, it is respectfully submitted this Court should issue an order granting the instant motion to transfer.

Dated: December 15, 2009                             Respectfully submitted,

                                                     ROPERS, MAJESKI, KOHN & BENTLEY


                                                     By: /s/ Robert P. Andris
                                                         ROBERT P. ANDRIS
                                                         LAEL D. ANDARA
                                                         Attorneys for Defendant
                                                         HEAVEN HILL DISTILLERIES, INC.