1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RARE BREED DISTILLING,                         No. C-09-04728 EDL

       Plaintiff,                              **ORDER DENYING DEFENDANT'S**
                                               **MOTION TO TRANSFER**
  v.

HEAVEN HILL DISTILLERIES,

       Defendant.
_____/

      Plaintiff Rare Breed Distilling is the owner of the trademark "Wild Turkey American Honey,"
which is the name of Rare Breed's bourbon-based, honey-flavored liqueur that was introduced in
2006.  Defendant Heaven Hill Distilleries crafts its own honey-flavored bourbon liqueur, "Evan
Williams Honey Reserve," that was introduced in 2009, and for which a trademark application is
pending.  Rare Breed alleges that Heaven Hill's Evan Williams Honey Reserve product infringes
Rare Breed's Wild Turkey American Honey trademark and trade dress in violation of the Lanham
Act, 15 U.S.C. § 1125, et seq., and California Business & Professions Code §§ 14200, et seq.

      Defendant filed a Motion to Transfer this matter to the Eastern District of Kentucky for the
convenience of witnesses pursuant to 28 U.S.C. § 1404(a).  The motion was fully briefed, and the
Court held a hearing on January 12, 2010.  For the reasons stated at the hearing and in this Order,
Defendant's Motion to Transfer is denied.

**Background**

      Plaintiff Rare Breed is a Delaware corporation that has its principal place of business in
Kentucky at the address for the distillery.  See Declaration of Robert Andris Ex. D.  Rare Breed has
registered several assumed names with the Secretary of State for Kentucky.  See Andris Decl. Ex. D,
E, F, G.  There is no evidence that Rare Breed has ever registered to do business in California.  See

1   Andris Decl. Ex. H, I.

2       Rare Breed, which is a subsidiary of Davide Campari Milano, acquired the Wild Turkey

3   brands, including American Honey, from Pernod Ricard in April 2009.  See Declaration of Shawn

4   Conway ¶ 2.  SKYY Spirits is Rare Breed's affiliate, and is the national distributor and marketer of

5   Rare Breed's American Honey brand.  See Declaration of Matthew Davenport ¶ 2; Declaration of

6   Joseph Uranga ¶ 4; Conway Decl. ¶ 4.  SKYY is based in San Francisco.  See Conway Decl. ¶ 4.

7   Rare Breed distills and bottles American Honey in Kentucky.  See id.

8       Defendant Heaven Hill is the largest independent, family-owned and operated producer and

9   marketer of distilled spirits in the country.  See Shapira Decl. ¶ 2.  It is headquartered in Kentucky.

10  See id. ¶ 3.  The Evan Williams Honey Reserve product at issue in this case has never been sold in

11  California.  See id. ¶ 6.

12  **Legal Standard**

13      Under § 1404(a), the court has discretion to order transfer: "[f]or the convenience of parties

14  and witnesses, in the interest of justice, a district court may transfer any civil action to any other

15  district or division where it might have been brought."  Determining whether an action should be

16  transferred pursuant to § 1404(a) is a two-step process.  The transferor court must first determine

17  whether the action "might have been brought" in the transferee court, and then the court must make

18  an "individualized, case-by-case consideration of convenience and fairness."  Inherent.com v.

19  Martindale-Hubbell, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (citing Hatch v. Reliance Ins.

20  Co., 758 F.2d 409, 414 (9th Cir. 1985); Jones v. GNC Franchising, 211 F.3d 495, 498 (9th Cir.

21  2000)).  The burden is on the defendant to show that transfer is appropriate.  See Commodity

22  Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.1979).

23      Here, there is no dispute that the first prong of the § 1404(a) analysis is met.  This action might

24  have been brought under 28 U.S.C. § 1391(e) in the Eastern District of Kentucky because Defendant

25  resides there.  See 28 U.S.C. § 1391(e) ("A civil action in which a defendant is an officer or

26  employee of the United States or any agency thereof acting in his official capacity or under color of

27  legal authority, or an agency of the United States, or the United States, may, except as otherwise

28  provided by law, be brought in any judicial district in which (1) a defendant in the action resides, . . .

United States District Court
For the Northern District of California

1 | .").

2 |      Under the second prong of the 1404(a) analysis, the plain language of the statute requires the

3 | Court to consider at least three factors in deciding whether to transfer a claim to another court: (1)

4 | convenience of parties; (2) convenience of witnesses; and (3) the interest of justice.  Courts also

5 | weigh the plaintiff's choice of forum.  <u>See</u> <u>Securities Investor Prot. Corp. v. Vigman</u>, 764 F.2d 1309,

6 | 1317 (9th Cir. 1985).  In determining the convenience of the parties and witnesses and the interests

7 | of justice, a Court may consider a number of factors including:

8 | > (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the

9 | > convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial

10 | > in each forum.

11 | <u>Gerin v. Aegon USA, Inc.</u>, No. C 06-5407, 2007 WL 1033472, at *4 (N.D. Cal., April 4, 2007)

12 | (citing <u>Jones v. GNC Franchising</u>, 211 F.3d 495, 498-99 (9th Cir. 2000)).

13 |      Unless the balance of the § 1404(a) factors weighs heavily in favor of the defendants, "the

14 | plaintiff's choice of forum should rarely be disturbed."  <u>Securities Investor</u>, 764 F.2d at 1317; <u>see</u>

15 | <u>also</u> <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986) ("defendant

16 | must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum").  However, as

17 | stated by the Ninth Circuit: "[i]f the operative facts have not occurred within the forum of original

18 | selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's

19 | choice is entitled only to minimal consideration."  <u>Pacific Car and Foundry Co. v. Pence</u>, 403 F.2d

20 | 949, 954 (9th Cir. 1968).  Subsequent district court opinions have, however, stated the standard in

21 | the disjunctive: "The degree to which courts defer to the plaintiff's chosen venue is substantially

22 | reduced where the plaintiff's venue choice is not its residence *or* where the forum chosen lacks a

23 | significant connection to the activities alleged in the complaint." <u>See, e.g.,</u> <u>Fabus Corp. v. Asiana</u>

24 | <u>Express Corp.</u>, 2001 WL 253185, at *1 (N.D. Cal. March 5, 2001) (emphasis added); <u>Williams v.</u>

25 | <u>Bowman</u>, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citing <u>Fabus</u>, 2001 WL 253185, at *1).

26 | However, transfer should be denied where it would "merely shift rather than eliminate the

27 | inconvenience."  <u>Decker Coal</u>, 805 F.2d at 843.

28 |

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   **Discussion**

2       **Plaintiff's Choice of Forum**

3           As noted above, Plaintiff's choice of forum weighs heavily against transfer.  This is especially

4   true when a plaintiff chooses to sue in its home state.  See Warfield v. Gardner, 346 F. Supp. 2d

5   1033, 1044 (D. Ariz. 2004) (plaintiff's choice of "home forum is to be given substantial deference");

6   Ravelo Monegro v. Rosa, 211 F.3d 509, 513 (9th Cir. 2000) (referring to the "strong presumption in

7   favor of a domestic plaintiff's forum choice.").  The deference accorded to a plaintiff's chosen

8   forum should be balanced against both the extent of a defendant's contacts with the chosen forum

9   and a plaintiff's contacts, including those relating to a plaintiff's cause of action.  See Pacific Car

10  and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir.1968). "If the operative facts have not

11  occurred within the forum of original selection and that forum has no particular interest in the parties

12  or the subject matter, [a] plaintiff's choice is only entitled to minimal consideration."  Id.  Here, Rare

13  Breed, a Delaware corporation with its principal place of business in Kentucky, has not chosen to

14  sue in its home state.  It is not licensed to do business in California.  Rare Breed makes a persuasive

15  argument, however, that it has strong contacts with the Northern District of California related to this

16  intellectual property dispute.

17          Rare Breed's affiliate, SKYY, American Honey's national marketer and distributor, is based

18  on San Francisco.  See Conway Decl. ¶ 4.  SKYY performs almost all of the functions relating to the

19  American Honey brand, including marketing, sales, distribution, finance and accounting, legal,

20  licensing/permits, compliance, intellectual property, information technology, and management.  See

21  Conway Decl. ¶ 4.  Accordingly, SKYY performs many of the functions for Rare Breed and

22  American Honey that are relevant to the trademark and trade dress infringement claims.  See AMF,

23  Inc., v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979) (stating that likelihood of confusion

24  is a pivotal inquiry in a trademark infringement case, and the factors that are relevant to that inquiry

25  are: "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of

26  actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be

27  exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of

28  expansion of the product lines."); see also Art Attacks Ink v. MGA Entertainment Inc., 581 F.3d

1138, 1145 (9th Cir. 2009) ("To succeed on a trade dress infringement based on product design, the plaintiff must show that her design has attained secondary meaning. 'Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant.'") (internal citations omitted).

In addition, Rare Breed has some high level executives in California.  Franco Peroni is the president of Rare Breed; he is employee of Campari and is based in SKYY's San Francisco offices.  See Conway Decl. ¶ 5.  The General Counsel and Secretary of both Rare Breed and SKYY is Sarah Petrik, who is based in San Francisco.  See id.

Other Rare Breed employees also perform significant work in San Francisco.  The Vice President-Marketing of Rare Breed is Joseph Uranga, who is based on New York but spends at least one week per month in SKYY's San Francisco offices.  See Conway Decl. ¶ 7.  The Senior Brand Manager for Wild Turkey and American Honey is Matthew Biegen, who is a Rare Breed employee based on New York but who also spends at least one week per month in SKYY's San Francisco offices.  See id. ¶ 8.

 The SKYY employees responsible for the American Honey brand are located in San Francisco, including the senior marketing executive responsible for the American Honey brand (see Conway Decl. ¶ 6), SKYY's Vice President - Sales, who is the senior executive responsible for the sales and distribution of American Honey (see id. ¶ 12), and the Director of Sales Administration, who is responsible for management of all data and reports relating to the sale and distribution of American Honey.  See id. ¶ 13.  In addition, the Vice President for Strategic Marketing and Support for American Honey is based in San Francisco (see id. ¶ 14), as is the Chief Financial Officer of SKYY.  See id. ¶ 15.  Further, SKYY manages the information technology functions for Rare Breed and the American Honey brand, and its Senior Systems Administrator is based in San Francisco.  See id. ¶¶ 17-19.

Further, SKYY holds all the beverage alcohol licenses and permits necessary for the import, marketing and sale of American Honey across the United States, whereas Rare Breed holds only

1  those beverage licenses necessary to operate in Kentucky.  <u>See</u> Conway Decl. ¶ 16.  SKYY's

2  responsibility for Rare Breed's intellectual property includes the clearance, prosecution, policing

3  and protection of Rare Breed's trademarks, trade dress and other intellectual property.  <u>See</u> <u>id.</u>

4  Accordingly, even though this district is not Rare Breed's home forum, Rare Breed does have

5  significant contacts here relating to the issues in this case.

6      Heaven Hill argues that California has no connection to this lawsuit because the accused

7  product has never been sold here.  <u>See</u> Declaration of Max Shapira ¶ 6; <u>see also</u> <u>Cottman</u>

8  <u>Transmission Sys., Inc. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994) (stating that "'a cause of action

9  for trademark infringement arises where the passing off occurs.'") (internal citation omitted).

10  <u>Cottman</u>, however, is not directly on point because it addressed the question of whether venue was

11  proper under § 1391(b)(2), not § 1404(a).  Heaven Hill has not raised a defense of improper venue.

12      Heaven Hill also argues that the claim of trademark infringement is tenuous.  However,

13  Heaven Hill has cited no authority for the argument that the Court should consider the merits of the

14  claims in determining a motion to transfer under § 1404(a).

15      **Convenience of the parties**

16      The factors relating to convenience of the parties weigh somewhat in favor of the Northern

17  District of California.  As described above, SKYY, which is based in San Francisco, performs all the

18  work for the American Honey brand that is relevant to the trademark infringement suit.  Rare Breed

19  will call SKYY witnesses to testify about the marketing, sales, and distribution of American Honey,

20  its brand image and positioning, its target and actual customers, the strength of its mark and trade

21  dress, and the harm suffered.  Therefore, the nature of the testimony from the San Francisco-based

22  SKYY witnesses goes to central issues in this lawsuit.  <u>See</u> <u>Kannar v. Alticor, Inc.</u>, 2009 U.S. Dist.

23  LEXIS 35091, at *5 (N.D. Cal. Apr. 9. 2009) (noting that the "nature and quality" of witnesses,

24  rather than the number of witnesses, is relevant).

25      Heaven Hill has operated in California for thirty years; it has been licensed by the California

26  Department of Alcohol Beverage Control as an out of state distilled spirits shipped since 1980.  <u>See</u>

27  Declaration of James Wesley Kinnear Ex. C.  Since 1985, Heaven Hill has been registered with

28  California as a corporation entitled to do business here.  <u>See</u> Kinnear Decl. Ex. D.  California is not

1    an inconvenient forum for Heaven Hill.

2         Heaven Hill argues that SKYY and Rare Breed employees should be available for testimony in

3    any venue.  See Kannar, 2009 U.S. Dist. LEXIS 35091, at *5 (focus on convenience is on third party

4    witnesses, not necessarily employees).  Although employees would presumably be able to appear in

5    any venue on behalf of their employer, it would be more convenient to have them testify in San

6    Francisco where they work, rather than in Kentucky.

7         Heaven Hill notes that while Rare Breed has an office in California, the distillery is located in

8    Kentucky, and Rare Breed is a registered company in Kentucky.  Heaven Hill also notes that Rare

9    Breed is part of a world wide entity that is better able to absorb additional costs associated with

10   transfer to Kentucky.  See Dwyer v. General Motors Corp., 853 F. Supp. 690, 693 (S.D. N.Y. 1994)

11   (court may consider relative means of parties on transfer motion).  In Dwyer, however, the plaintiffs

12   were individuals suing a large corporation with much greater assets.  By contrast, this case involves

13   two major corporate competitors.  The ability to absorb costs here is a neutral factor.

14        Heaven Hill also argues that its employee witnesses work primarily from offices in Louisville

15   and Bardstown in Kentucky.  Honey Reserve was developed by Heaven Hill employees who reside

16   in Kentucky.  See Shapira Decl. ¶ 7 (stating that the individuals involved in the development of the

17   product include: Max Shapira, President of Heaven Hill; Kate Latts, Director of Marketing; Susan

18   Wahl, Brand Manager for Evan Williams; Hannah Snedeker and Becky Alvey, Assistant Brand

19   Managers for Evan Williams; Larry Kass, Director of Corporate Communications; and Steve Feller,

20   Director of North American Sales).  These employee witnesses will provide testimony regarding the

21   selection of the Honey Reserve trademark, the development of the packaging and trade dress, the

22   marketing strategy including product placement, the label approval and development of the product.

23   See id.  Requiring these senior managers and marketing employees to be in California for an

24   extended period would be burdensome for Heaven Hill.  See id.  Heaven Hill also has customer

25   service representatives who reside and work in Kentucky, and who will offer testimony about

26   inquiries Heaven Hill has received in connection with the Honey Reserve product.  See Shapira

27   Decl. ¶ 9.  Heaven Hill also has sales personnel in Kentucky who will testify about the distribution

28   of Honey Reserve.  See Shapira Decl. ¶ 10.  Further, Heaven Hill's information technology

1   personnel, Danny Jackson, is in Kentucky.  See Shapira Decl. ¶ 12.

2        Even though Heaven Hill's employees are located in Kentucky, and it would be more

3   convenient for them to appear in the Eastern District of Kentucky, the majority of the relevant

4   employee witnesses for Rare Breed are found in the Northern District of California.  Transferring

5   this case to Kentucky would on the whole merely shift much of the inconvenience from Heaven Hill

6   to Rare Breed, which weighs somewhat against transfer.  See Decker Coal, 805 F.2d at 843.

7        **Convenience of third party witnesses**

8        Heaven Hill argues that its third party witnesses are located in Kentucky or other states closer

9   to Kentucky than to California.  Specifically, Heaven Hill plans to call witnesses employed by

10  distilled beverage brokers who are located in Oklahoma, Virginia and North Carolina.  Those

11  witnesses have stated that they will travel to Kentucky for this case, but not to California.  See

12  Declaration of Mark Fisher ¶ 6 (president of J.H.S. Marketing, which is a broker of beverage alcohol

13  products in Oklahoma that has Evan Williams Honey Reserve as part of its portfolio, works with

14  retailers for product placement, and states that he would not be able to travel to California to offer

15  testimony but could go to Kentucky); Declaration of Genie Mitchell ¶ 6 (Virginia State Manager for

16  Sparrow & Associates, which is a broker of beverage alcohol products in Virginia that has Evan

17  Williams Honey Reserve as part of its portfolio, works with retailers for product placement, and

18  states that she could not travel to California to offer testimony but could go to Kentucky);

19  Declaration of Avery Sparrow ¶ 6 (Vice-President and Sales Manager of Sparrow & Associates,

20  which is a broker of beverage alcohol products in North Carolina that has Evan Williams Honey

21  Reserve as part of its portfolio, supervises sales personnel who work with retailers for product

22  placement, and states that she could not travel to California to offer testimony, but could go to

23  Kentucky); Declaration of David Sparrow ¶ 6 (President of Sparrow & Associates, which is a broker

24  of beverage alcohol products in North Carolina that has Evan Williams Honey Reserve as part of its

25  portfolio, supervises sales personnel who work with retailers for product placement, and states that

26  he could not travel to California to offer testimony, but could go to Kentucky).  Heaven Hill also

27  argues that since the products are both sold in Kentucky, each party would be able to use the court's

28  subpoena power to compel third party fact witnesses involved in the sale of the products to appear

1    there.

2          Further, Heaven Hill states that the firm of Keller Crescent Advertising, located in Evansville,

3    Indiana, about 170 miles from the Kentucky courthouse, was involved in the development of Honey

4    Reserve.  See Shapira Decl. ¶ 8.  Witnesses from that company are located in and around Evansville,

5    Indiana, and would be called to testify about the design of the Honey Reserve packaging and the

6    choice of the Honey Reserve name.  See id.

7          Heaven Hill argues that the most significant witnesses are those with actual experience in the

8    placement of products in the marketplace and that those witnesses are unwilling to travel to

9    California, so the quality of those witnesses' testimony weighs heavily in favor of transfer.

10   However, while this testimony will likely be important, it will not necessarily be the most important.

11   See Sleekcraft, 599 F.2d at 348-49.  Only some of the Sleekcraft factors can be addressed by

12   individuals in the marketplace.  Further, the Court is skeptical that the brokers working with Heaven

13   Hill would not voluntarily appear in San Francisco if asked by Heaven Hill.  Further, if the witnesses

14   would not voluntarily appear, the parties could rely on videotaped depositions.

15         By contrast, Rare Breed's third party witnesses state that it would be more convenient for them

16   to travel to California than to Kentucky based on more available non-stop flights and the driving

17   distances from Kentucky airports to the courthouse.  See Declaration of Erich Rohloff ¶ 5 (Program

18   Director for Team Enterprises, who coordinates and manages premise events and bar nights across

19   the country to promote the American Honey brand among consumers, and who is based in Chicago,

20   states that it would be more convenient to travel to San Francisco because of his extensive travel

21   schedule and the availability of non-stop flights); Declaration of Mark Barabell ¶ 5 (Director of

22   Marketing Research for Pernod Ricard USA, which sold the American Honey brand to Rare Breed,

23   and who is based in New York, states that it would be more convenient to travel to San Francisco

24   than Kentucky based on the availability of non-stop flights and the driving distances between the

25   airports and the Kentucky airports); Declaration of Michelle Lawton ¶ 7 (Senior Vice President for

26   Design Management for Sterling Brands, which is the brand strategy and design firm for the

27   American Honey brand, who is based on New York, states that Sterling does not have offices or

28   personnel in Kentucky and that it would be inconvenient for Sterling personnel to travel there);

9

**United States District Court**
For the Northern District of California

1  Declaration of Steve Walkerwicz ¶ 7 (Vice President of On Premise Consumer Marketing for

2  Pernod Ricard USA, whose function it is to coordinate and manage premise events and bar nights

3  for the American Honey brand, and who is based in New York, states that it would be more

4  convenient to travel to San Francisco given the non-stop flights and the driving distance between

5  airports and the Kentucky court). Further, another witness, Shawn Conway, who was the Wild

6  Turkey Integration Project leader for SKYY and oversaw the transition of the Wild Turkey brands

7  from Pernod Ricard to Rare Breed and SKYY, is leaving his employment with SKYY in January

8  2010 to take another job that is based in San Francisco. See Conway Decl. ¶ 3.

9      Rare Breed argues that the "nature and quality" of the testimony of its third party witnesses is

10  compelling. Pernod Ricard, which previously owed the Wild Turkey brands, designed, developed

11  and launched American Honey in 2006 until it was sold to Davide Campari Milano in 2009. See

12  Uranga Decl. ¶ 2; Barabell Decl. ¶ 2; Conway Decl. ¶ 2. This testimony is relevant to this case,

13  even though Evan Williams Honey Reserve was not on the market at the time of the development

14  and launch of American Honey. See Reply at 3.

15      In reply, Heaven Hill notes that the travel time to get from New York to the courthouse in the

16  Eastern District of Kentucky via the three major airports serving the Frankfort area is approximately

17  five hours, while it takes at least seven hours to get to the Northern District of California. See Supp.

18  Andris Decl. Ex. J-Q. Therefore, Heaven Hill argues that Rare Breed's witnesses would not be

19  inconvenienced by travel to Kentucky. However, many of the flights to the Kentucky area are not

20  non-stop, and there may be more daily flights to San Francisco than to Kentucky from various places

21  in the United States. Given the vagaries of travel in this day and age, it is difficult to predict which

22  trip would be more inconvenient.

23      Although both parties have shown that third party witnesses will face some inconvenience no

24  matter where this case is litigated, Heaven Hill has not made a strong case for inconvenience that

25  outweighs Rare Breed's choice of forum. This factor is at best neutral.

26      **Familiarity of forum with applicable law**

27      Both the Eastern District of Kentucky and the Northern District of California are familiar with

28  the federal law at issue in this case. Although the Kentucky court could adjudicate the state law

10

1  claims in this case, the California court may have more familiarity with its own state law, which

2  weighs slightly against transfer.

3      **Ease of access to evidence**

4      Heaven Hill argues that the majority of its documentary evidence is located in Kentucky, but

5  that evidence is easily transported to any venue in this era of electronic communication.   Heaven

6  Hill also argues that Rare Breed has made specific allegations in the complaint regarding the manner

7  in which the products are sold that contribute to customer confusion, and that Heaven Hill does not

8  sell its product in California.  However, neither party provided evidence regarding retailer or

9  consumer witnesses whose convenience should be considered in this case.  Accordingly, this factor

10 is neutral.

11     **Local Interests**

12     The parties have shown that both the Eastern District of Kentucky and the Northern District of

13 California have an interest in this case.  Although neither party is a California corporation,

14 California has an interest because SKYY, who is Rare breed's affiliate responsible for the American

15 Honey brand, is based in California and American Honey is sold in California.  Further, Heaven Hill

16 has contacts with California because it has been selling whiskey here for thirty years, and has been

17 licensed to ship whiskey here for that long.  Kentucky also has an important interest in this case

18 because the parties' distilleries are located there, Heaven Hill's party witnesses are there, and Honey

19 Reserve is sold there.  This factor is neutral or weighs slightly in favor of transfer.  Taken together,

20 however, on balance, transfer is not warranted.[1]

21 **Conclusion**

22     Defendant's Motion to Transfer is denied.

23     **IT IS SO ORDERED.**

24 Dated: January 22, 2010

                                                    *Elizabeth D. Laporte*
25                                                   ELIZABETH D. LAPORTE
                                                    United States Magistrate Judge

26

27

28     ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
        [1]      The parties do not rely on two other potential considerations, relative congestion of the
courts' calendars, and the issue of consolidation.